CUNA MUTUAL INSURANCE SOCIETY

v.

NAVY YARD CREDIT UNION, INCORPORATED

Record No. 860983

NAVY YARD CREDIT UNION, INCORPORATED

v.

SARAH JENKINS, ADMINISTRATRIX, ETC.

Record No. 861208

April 21, 1989

Present: Carrico, C.J., Compton, Russell, Thomas, Whiting, and Lacy, JJ.,
and Poff, Senior Justice

*Edward L. Breeden, III (Lance A. Jackson; Breeden, MacMillan & Green*, on brief), for appellant. (Record No. 860983)

*William H. Oast, III (Babb, Oast, Hook & Crowe*, on brief), for appellee. (Record No. 860983)

*William H. Oast, III (Babb, Oast, Hook & Crowe*, on brief), for appellant. (Record No. 861208)

*Donald Grant Wise* for appellee. (Record No. 861208)

POFF, Senior Justice, delivered the opinion of the Court.

We have combined for review separate appeals from a judgment confirming two jury verdicts. In a single trial, the jury returned a verdict for the plaintiff, Sarah Jenkins, Administratrix, against Navy Yard Credit Union (the credit union) in her action for breach of contract and a verdict for the credit union on its cross-claim against CUNA Mutual Insurance Society (CUNA). The credit union and CUNA contend, *inter alia*, that the evidence fails to show that the plaintiff's decedent had been physically eligible for coverage under a group credit life insurance policy issued to the credit union by CUNA.

CUNA agreed in its contract with the credit union to insure certain loans advanced by the credit union to its members. Specifically, CUNA covenanted to pay the "insurable loan balance" remaining unpaid at the death of the borrower. CUNA's policy defined that term to exclude "loan balances of Members who do not meet the physical requirements as hereinafter defined". The physical-requirements clause provided that coverage was extended upon an objective standard, *viz.*, that at the time the credit union disbursed the funds, "the Member is physically able to perform, or within a reasonable time to resume, the usual duties of his livelihood."

In October 1983, James F. Jenkins was advised that he had developed a cancerous spot on one lung. An employee of the Norfolk Naval Shipyard for 36 years, Jenkins had accumulated extensive "sick leave" entitlement. Following the diagnosis, his employer placed him on sick-leave status in order that he might make daily visits to the hospital for cobalt treatments.

During the course of Jenkins' employment, the credit union had extended him a number of loans. In November 1983, the credit union agreed to extend another loan to finance the purchase of a new automobile, and Jenkins placed an order with a dealer. During the last week in January 1984, the credit union disbursed to Jenkins the proceeds of a $9,000 loan. The credit union supplied Jenkins with a schedule of loan rates which explained: "All Loans have Free Loan Life Insurance and at a Small Cost, Disability Insurance May be Purchased." Jenkins signed all the loan papers. Included was a document entitled "Credit Agreement and Truth-in-Lending Disclosures". That document provided, in part, that "[y]ou understand you must be actively at work and regularly

performing the usual duties of a full-time gainful occupation on the date of each loan advance for this coverage to take effect." Jenkins checked a box beneath this provision, indicating that he had decided not to purchase credit disability insurance coverage.

As an outpatient, Jenkins had driven his car to the hospital for the daily cobalt treatments. On February 14, 1984, he was admitted as a patient to the hospital where he died five days later. His widow, Sarah Jenkins, qualified as administratrix of his estate and demanded the funds necessary to pay the balance due on the loan.

The demand was refused, and Mrs. Jenkins filed a motion for judgment against the credit union, claiming damages for breach of its contract commitment to provide credit life insurance. The credit union denied liability and filed a counterclaim for the balance due on Jenkins' note. The credit union also filed a cross-claim for indemnity against CUNA. In defense of the cross-claim, CUNA denied liability to the credit union on the ground that Jenkins was physically ineligible for insurance coverage at the time the credit union disbursed the funds.

At trial, Jenkins' supervisor at the shipyard testified that Jenkins was "carried . . . on sick leave" until his death; that "he wanted to come back to work"; and that he never talked of retirement. Mrs. Jenkins testified that her husband was physically able to drive himself to the hospital for the cobalt treatments; that the treatments "seemed to" help him; and that he made no attempt to retire "because he always planned to go back to work".

The trial court overruled motions to strike filed separately by the credit union and by CUNA. A jury returned a verdict awarding the plaintiff damages of $8,671.11 against the credit union and a verdict awarding the credit union damages for the same amount against CUNA. In the final order, the trial court overruled motions to set aside the verdicts and entered judgment confirming those verdicts. We granted petitions for appeal filed separately by the credit union and by CUNA.

Both appellants assign error to the rulings against their motions to strike. In its appeal, CUNA argues that "there was no evidence of sufficient probative force to support a finding that Mr. Jenkins met the physical requirements set out in CUNA's policy with the Credit Union and plainly noticed to Mr. Jenkins in the credit agreement and truth-in-lending document which he signed on January 24, 1984." Responding to CUNA on brief, the credit union

says that it "agrees with the principles of law and arguments CUNA presents".

In addition, the credit union suggests in its own appeal that the trial court erred "in submitting to the jury the issue of whether or not an ambiguity existed in the loan application". In response, the plaintiff notes, and the record shows, that "the trial Judge did not instruct the jury in this regard." Instead, as the plaintiff says on brief, the crucial issue implicit in the jury instructions read together was whether, at the time the loan funds were disbursed, Jenkins was " '*physically able to perform* or within a reasonable time to resume, the usual duties of his livelihood' (Emphasis supplied)." In oral argument, the plaintiff, construing our recent opinion in *Shenandoah Life Insurance Co.* v. *French*, 236 Va. 427, 373 S.E.2d 718 (1988), expressly waived reliance on the "actively at work" clause contained in the loan papers Jenkins signed.

The dispositive issue before us, common to both appeals, is whether the trial court erred in overruling the motions to strike made at the conclusion of all the evidence. As that issue was framed on brief and explicated in oral argument by all three parties, the underlying question is whether the evidence adduced by the plaintiff at trial was sufficient to satisfy the "physically able to perform" standard prescribed in the insurance contract between CUNA and the credit union.

The principles of law governing rulings on motions to strike for insufficiency of evidence are much like those once applied to rulings on demurrers to the evidence.[1] *Bohon* v. *Manning*, 210 Va. 173, 174-75, 169 S.E.2d 452, 453 (1969); *Hall* v. *Hockaday*, 206 Va. 792, 796-97, 146 S.E.2d 215, 218 (1966).

> When the sufficiency of a plaintiff's evidence is challenged by a motion to strike, the trial court must view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the plaintiff and resolve any reasonable doubt as to its sufficiency in his favor.

*Meeks* v. *Hodges*, 226 Va. 106, 109, 306 S.E.2d 879, 881 (1983) (citation omitted). "[T]he trial court . . . should grant the motion only when it conclusively appears that the plaintiff has proved no

---

[1] Demurrers to the evidence and pleas in abatement were abolished by Acts 1977, c. 617. Code § 8.01-276.

cause of action against the defendant, or when it plainly appears that the trial court would be compelled to set aside any verdict found for the plaintiff as being without evidence to support it." *Newton* v. *Veney & Raines*, 220 Va. 947, 951, 265 S.E.2d 707, 710 (1980) (citations omitted).

The standard applied on appeal is the same. When we review a case in which the trial court has acted upon a motion to strike at the conclusion of all the evidence, "we apply the principles governing consideration of evidence upon a motion to set aside a verdict as contrary to the evidence." *Matney* v. *Cedar Land Farms*, 216 Va. 932, 933-34, 224 S.E.2d 162, (1976); *accord Hadeed* v. *Medic-24, Ltd.*, 237 Va. 277, 280, 377 S.E.2d 589, 590 (1989).

Yet, "in drawing inferences . . . the court can draw only such inferences as a jury might have *fairly* drawn from the evidence. The court is not bound to draw inferences that are strained, forced, or contrary to reason." *Farmer's Ad.* v. *Ches. & Ohio Ry. Co.*, 144 Va. 65, 92, 131 S.E. 334, 342 (1926) (emphasis in original) (citations omitted); *accord Williams* v. *Chesapeake Bay Bridge*, 208 Va. 714, 717, 160 S.E.2d 573, 575-76 (1968). "[W]hen fair minded men cannot be of two opinions as to the inferences . . . then the matter is for the court and not for the jury." *Davis* v. *Rodgers*, 139 Va. 618, 622, 124 S.E. 408, 409 (1924).

The burden of proof rested upon the plaintiff to satisfy the physical-requirements standard of coverage. The record before us shows that the plaintiff offered no *direct* evidence that the state of Jenkins' health at the time the loan was closed was such that he was "physically able to perform, or within a reasonable time to resume, the usual duties of his livelihood."[2] Indeed, the record fails to reveal even the nature of the duties Jenkins usually performed at the shipyard.

Nor do we think that the plaintiff's testimony and that of Jenkins' supervisor support an *inference* sufficient to raise a jury question. That the decedent was physically able to drive his car during the course of his treatment shows nothing about his capacity to discharge the particular duties assigned by his employer. Jenkins choice of sick-leave status rather than retirement proves

---

[2] The language in the physical-requirements clause is identical to that construed in *CUNA Mutual Insurance Society* v. *Norman*, 237 Va. 33, 375 S.E.2d 724 (1989). All parties to the present appeal agree, however, that the analysis there is not relevant here.

nothing more than his hope of returning to work. Even if, as the testimony implies, he believed that he was, or within a reasonable time would be, physically able to resume his usual duties, evidence of his subjective expectation does not satisfy the objective standard prescribed in the insurance policy.

We hold, therefore, that the trial court erred in overruling the motions to strike the evidence. We will reverse the judgment entered below. We will enter final judgment for the defendant credit union on the plaintiff's claim; final judgment for the credit union on its counterclaim; and final judgment for CUNA on the credit union's cross-claim.

*Reversed and final judgment.*