COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Chaney, Callins and White
Argued at Alexandria, Virginia

INTEGRATED COMPOSITE
 CONSTRUCTION SYSTEMS, LLC, d/b/a
 COR-TUF UHPC

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1423-22-4                      JUDGE DOMINIQUE A. CALLINS
                                                    APRIL 2, 2024

PREMIER UHPC, LLC


                    FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                              Donald M. Haddock, Judge Designate

                    Todd Lee Juneau (Juneau & Mitchell, on brief), for appellant.

                    No brief or argument for appellee.


        This case involves a dispute over the non-delivery of ultra high performance concrete

(UHPC or "concrete") purchased from Integrated Composite Construction Systems, LLC, a

UHPC supplier, by Premier, Integrated Composite's distributor.  Integrated Composite appeals

the trial court's decision awarding Premier unjust enrichment damages, arguing that the court (i)

erred because recovery was precluded under an unjust enrichment theory; (ii) erred in denying its

two motions for summary judgment; (iii) erred in denying its motion to strike; and (iv) erred in

permitting the admission of two invoices into evidence.  Finding that arguments (i), (ii), and (iii)

are all defaulted, and argument (iv) is without merit, we affirm the judgment of the trial court.


---

        [*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND

Integrated Composite (also "Cor-Tuf") is a manufacturer of UHPC. In May 2019, Premier signed an agreement to distribute UHPC for Integrated Composite. After signing the agreement, Premier purchased 50 units[1] of UHPC. The first 25-unit purchase for $33,125 was memorialized in a May 31, 2019 invoice. The second 25-unit purchase for $31,250[2] was memorialized in an August 9, 2019 invoice. Premier's relationship with Integrated Composite ended in October 2020, when Integrated Composite terminated their distribution agreement.

Premier filed a complaint against Integrated Composite. The complaint included two counts: the first count, for breach of contract; the second count, pled in the alternative, for unjust enrichment. Premier alleged that Integrated Composite never delivered the 50 units of UHPC for which Premier paid. The complaint also alleged that in May 2020, a year after Premier placed its first order, Premier agreed to "donate" ten cubic yards of UHPC "for testing purposes." Accordingly, although Premier alleged that it had paid $66,375 for the 50 units of UHPC, it credited to Integrated Composite $12,000 for the material used in the tests, leaving a total of $54,375 "due back" to Premier.

Integrated Composite filed both a motion craving oyer and a demurrer to Premier's complaint. The trial court overruled Integrate Composite's demurrer and denied its motion craving oyer. Several months later, Integrated Composite filed its first motion for summary judgment, followed shortly thereafter by a second motion for summary judgment. Integrated Composite's second motion for summary judgment argued that "[t]here was no oral contract between the parties, and unjust enrichment is not available as a cause of action to [Premier] due to obligations in the prior terminated written agreement." Integrated Composite claimed that

---

[1] One "unit" of concrete is equivalent to one yard of the same.

[2] Tax was exempted for the second, August, purchase of UHPC.

certain provisions in the distribution agreement controlled the dispute, including the agreement's "Entire Agreement," "Arbitration," and "Limited Liability" provisions. Integrated Composite also argued that the agreement's provision 10(f)(iv) was a "No Damages for Termination or Expiration" clause, stating that "Neither Company, nor Premier shall be liable to the other for damages of any kind . . . on account of termination . . . of this agreement."

In an order dated February 17, 2022, the trial court denied Integrated Composite's two motions for summary judgment. The order noted that "both parties appeared via WebEx" and that the court had considered "the memoranda and arguments of counsel." A transcript of the teleconference hearing was not included in the record for appellate review.

At trial, Premier called its manager, Kyle Meyer, to testify. During Meyer's testimony, Integrated Composite objected to the admission of the two invoices, arguing that they were "hearsay and parol evidence." The trial court overruled Integrated Composite's objections. Meyer then testified, without objection, as to the content of both invoices.

At the conclusion of Premier's evidence, Integrated Composite moved to strike. It argued that Premier was "trying to prove the existence of a separate verbal contract, when there is already a written distribution contract that they have admitted to, that was terminated." Integrated Composite further argued that the parol evidence rule barred admission of the invoices.[3] The trial court denied the motion and Integrated Composite put on its evidence. Integrated Composite did not renew its motion to strike.

---

[3] In its written motion to strike, Integrated Composite argued that Premier's evidence did "not support[] their claim of a verbal contract (Count 1) or unjust enrichment (Count 2)." The written motion advanced two main arguments: that "[t]here was no oral contract between the parties, and [that] unjust enrichment is not available as a cause of action . . . due to the parol evidence rule and to obligations in the prior terminated written agreement."

The trial court concluded that Integrated Composite had been unjustly enriched and awarded to Premier judgment in the amount of $23,750. The court entered an order on August 22, 2022, affirming its ruling. Integrated Composite did not object to the order.

Integrated Composite timely moved to set aside the trial court's verdict. Among other things, Integrated Composite argued that under Virginia law, "the existence of an express contract covering the same subject matter of the parties' dispute precludes a claim for unjust enrichment," and cited in support *Davis Construction Corp. v. FTJ, Inc.*, 298 Va. 582 (2020). On November 22, 2022, the trial court entered an order concluding that it had "lost Jurisdiction [sic] and cannot grant [Integrated Composite's] motion to set aside the verdict." Integrated Composite appeals.

## ANALYSIS

### I. *Integrated Composite's Arguments Regarding Unjust Enrichment, its Motions for Summary Judgment, and its Motion to Strike are Procedurally Defaulted.*

#### A. Unjust Enrichment

Integrated Composite argues that the trial court erred in "finding that a court considering a breach of an implied contract claim may grant unjust enrichment damages where there is an express written agreement between the parties." Undergirding this argument is the well-established principle that "[t]he existence of an express contract covering the same subject matter of the parties' dispute precludes a claim for unjust enrichment." *Davis Constr. Corp.*, 298 Va. at 592 (alteration in original) (quoting *CGI Fed. Inc. v. FCi Fed., Inc.*, 295 Va. 506, 519 (2018)).[4] But Integrated Composite failed to preserve its unjust enrichment argument for appellate review.

---

[4] At oral argument, Integrated Composite's counsel conceded that he did not have an opportunity to "bring up the *Davis* case" in argument before the trial court and admitted that it is "questionable" as to whether this argument was preserved for appellate review.

Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." But not just any objection will suffice. To preserve an issue for appeal, the objection must be "promptly brought to the attention of the trial court with sufficient specificity that the alleged error can be dealt with and timely addressed and corrected when necessary." *Yazdani v. Sazegar*, 76 Va. App. 261, 276 (2022) (quoting *Bazemore v. Commonwealth*, 42 Va. App. 203, 218 (2004) (en banc)). The contemporaneous objection requirement is not procedural superfluity. Rather, it serves the laudatory ends of fair play and judicial economy, "to protect the trial court from appeals based upon undisclosed grounds, to prevent the setting of traps on appeal, to enable the trial judge to rule intelligently, and to avoid unnecessary reversals and mistrials." *Palmer v. Atl. Coast Pipeline, LLC*, 293 Va. 573, 579 (2017) (quoting *Reid v. Boyle*, 259 Va. 356, 372 (2000)) (analyzing Rule 5:25).

At trial, Integrated Composite failed to assert with either precision or specificity the argument it makes now on appeal—that the existence of an express agreement covering the same subject matter addressed in a dispute precludes a claim for unjust enrichment. In its closing, Integrated Composite simply argued that "there [wa]s no unjust enrichment"; that the distribution agreement "encompasse[d]" the alleged verbal contract, and as such, should control the dispute; and that "there was no separate contact."[5] Further, Integrated Composite did not mention unjust enrichment in its motion to strike, arguing instead that, under the parol evidence rule, extrinsic

---

[5] Neither did Integrated Composite raise this more precise argument in its second motion for summary judgment. Instead, it argued that "unjust enrichment is not available as a cause of action . . . due to obligations in the prior terminated written agreement."

evidence "cannot [be] use[d] . . . to explain, modify an existing complete, unambiguous written agreement."[6]

The unjust enrichment argument Integrated Composite makes on appeal appears to be modeled on an argument made in its motion to set aside the trial court's verdict. There, Integrated Composite argued that, under the circumstances of this case, unjust enrichment was precluded by law. Integrated Composite tied its argument to *Davis*, just as it does on appeal. However, Integrated Composite failed to obtain a ruling on its motion to set aside the verdict before the trial court lost jurisdiction of the case. Neither did it move the court to suspend the final judgment pending a ruling on its motion. "Because [Integrated Composite] did not obtain a ruling from the trial court on [its] [post-]trial motion, 'there is no ruling for [this Court] to review' on appeal, and [its] argument is waived under Rule 5A:18." *Williams v. Commonwealth*, 57 Va. App. 341, 347 (2010) (fourth alteration in original) (quoting *Fisher v. Commonwealth*, 16 Va. App. 447, 454 (1993)).

Integrated Composite supplies various record references to establish its preserved argument. These references crisscross the record but fail to pinpoint precisely where it preserved its unjust enrichment argument. Four such references are included in Integrated Composite's opening brief. The first references the trial court's determination that Integrated Composite had "been unjustly enriched." The second encompasses "Trial Exhibit 001," the distribution agreement between Integrated Composite and Premier. The third points to Meyer's testimony of the date that Premier entered into the distribution agreement with Integrated Composite. The fourth leads to the testimony of Brett Meinheimer, Premier's founder, acknowledging that the distribution agreement required that Premier maintain an inventory of 100 yards of UHPC.

---

[6] In its written motion to strike, Integrated Composite claimed that "unjust enrichment is not available as a cause of action to [Premier] due to the parol evidence rule and to obligations in the prior terminated written agreement."

In sum, Integrated Composite failed to state its objection with reasonable certainty at the time of the ruling, and "[w]e will not search the record for errors in order to interpret the appellant's contention and correct deficiencies in a brief." *See Buchanan v. Buchanan*, 14 Va. App. 53, 56 (1992); *see also* Rule 5A:20(c) (providing that "[a]n exact reference to the page(s) of the record or appendix where the alleged error has been preserved in the trial court . . . must be included with each assignment of error"). Moreover, Integrated Composite does not invoke the good-cause or ends-of-justice exceptions to Rule 5A:18. *See Hogle v. Commonwealth*, 75 Va. App. 743, 756 (2022) ("[T]he Court will not apply the [Rule 5A:18] exceptions *sua sponte*."). Accordingly, we hold that Rule 5A:18 bars consideration of Integrated Composite's argument regarding unjust enrichment.[7]

### B. Motions for Summary Judgment

Integrated Composite next argues that the trial court erred in denying its two motions for summary judgment. Yet, Integrated Composite did not include a transcript of the hearing for the motions when such transcript is necessary for the resolution of the issues Integrated Composite raises on appeal. Accordingly, Integrated Composite's arguments as to its two motions for summary judgment are defaulted pursuant to Rule 5A:8(b)(4)(ii).

As a general matter, the absence of a transcript "does nothing to diminish our jurisdiction." *Turner v. Commonwealth*, 2 Va. App. 96, 99 (1986). "If the record on appeal is sufficient in the absence of the transcript to determine the merits of the appellant's allegations, we are free to proceed to hear the case." *Id.* But, "[i]f . . . the transcript [or statement of facts] is indispensable to the determination of the case, then the requirements for making the transcript

---

[7] Our colleague's concurrence expends considerable analytical energy explaining why Integrated Composite's argument was preserved for appellate review. However, that such analytical effort is required to pull a preserved argument out of Integrated Composite's assignment of error militates against the conclusion that it was preserved.

[or statement of facts] a part of the record on appeal must be strictly adhered to." *Bay v. Commonwealth*, 60 Va. App. 520, 528 (2012) (second, third, and fourth alterations in original) (quoting *Turner*, 2 Va. App. at 99). Consequently, "[w]hen the appellant fails to ensure that the record contains transcripts or a written statement of facts necessary to permit resolution of appellate issues, any assignments of error affected by such omission will not be considered." Rule 5A:8(b)(4)(ii). "This Court has no authority to make exceptions to the filing requirements set out in the Rules." *Shiembob v. Shiembob*, 55 Va. App. 234, 246 (2009) (quoting *Turner*, 2 Va. App. at 99); *see also Bay*, 60 Va. App. at 528-29. "Whether the record is sufficiently complete to permit our review on appeal is a question of law subject to our *de novo* review." *Bay*, 60 Va. App. at 529.

Integrated Composite assigns error to the trial court's decision to deny summary judgment. Hence, in denying Integrated Composite's motions, the trial court must have determined that, as a matter of law, Integrated Composite's evidence was insufficient to warrant judgment. *See Piland Corp. v. League Constr. Co.*, 238 Va. 187, 189 (1989) ("Upon considering a motion for summary judgment, the court must rule, as a matter of law, on the sufficiency of the evidence; it does not weigh the evidence as a finder of fact."). As an antecedent matter, the trial court would have also reviewed its own orders and the parties' pleadings as well as any concessions made in oral argument to determine whether there were any material facts in genuine dispute. *See* Rule 3:20 ("If it appears from the pleadings, the orders, if any, made at a pretrial conference, the admissions, if any, in the proceedings, that the moving party is entitled to judgment, the court shall grant the motion. . . . Summary judgment may not be entered if any material fact is genuinely in dispute.").

In the absence of a transcript or a written statement of facts, we are without a necessary window into the relevant proceedings. We cannot discern what, if any, facts were delineated as

genuinely in dispute, or on what basis the trial court denied Integrated Composite's motions. Neither can we determine what precise arguments Integrated Composite made below with respect to each motion for summary judgment, and whether those arguments align with the arguments made in its written motions. Moreover, the record is unclear as to what, if any, representations the parties made regarding the disputed facts. In short, without a transcript or written statement of facts in lieu of a transcript, we do not know what occurred in the trial court. At oral argument, Integrated Composite attempted to close this epistemic gap by relaying to this Court what it alleged to have occurred at the summary judgment hearing. But, in so doing, counsel for Integrated Composite acknowledged that we need more information regarding what occurred at the hearing to resolve the issues Integrated Composite raises on appeal.

Thus, we hold that Integrated Composite's omission of a transcript or written statement of facts in lieu of a transcript precludes consideration of its arguments regarding its first and second motions for summary judgment. *See* Rule 5A:8(b)(4)(ii).

C. Motion to Strike

Integrated Composite also argues that the trial court erred in denying its motion to strike. We find that these arguments are defaulted because Integrated Composite failed to preserve these arguments below. *See* Rule 5A:18.

In arguing its motion to strike to the trial court, Integrated Composite emphasized a few specific issues raised in its written motion.[8] Namely, Integrated Composite argued that there was no oral contract because a written contract existed and that, under *Cave Hill Corp. v. Hiers*, 264 Va. 640 (2002), Premier improperly used extrinsic "evidence to explain, modify an existing

_____

[8] In its written motion to strike, Integrated Composite made several arguments focusing on a handful of provisions in the distribution agreement which it contended were relevant to the dispute, including the agreement's respective integration clause, arbitration provision, limited liability provision, termination provision, and "no termination damages" provision.

- 9 -

complete, unambiguous written agreement." Integrated Composite argued against admission of the invoices and "the testimony of [Premier's] witness to the existence of a verbal contract." The trial court denied Integrated Composite's motion to strike.

Integrated Composite did not renew its motion to strike at the conclusion of its evidence. In closing, Integrated Composite argued, in relevant part, that the distribution agreement "encompasse[d] the same product, the same parties, the same terms"; that there "was no separate contract"; that the distribution agreement "limit[ed] the damages"; that the distribution agreement contained an integration clause which precluded collateral contracts; and that records existed showing that "thirty-one units [of the UHPC Premier had ordered] were consumed out of the fifty."

Although "an appropriate argument made during closing . . . will preserve a challenge to the sufficiency of the evidence in a bench trial," *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011), "not every argument made in summation is an argument attacking the sufficiency of the evidence," *id.* at 357. In other words, "the sufficiency challenge must be clear enough for the trial court to discern its presence and to be able to *distinguish it from an argument on the merits*." *Id.* at 358 (emphasis added).

Integrated Composite argued that the distribution agreement barred Premier's claims. It also argued, in the alternative, that the evidence showed that 31 units of the UHPC had been used out of the 50 referenced in the purchase invoices. Integrated Composite's closing arguments do not clearly challenge the *sufficiency* of the evidence. Instead, its arguments shade into a contest on the merits of Premier's case-in-chief. As such, Integrated Composite did not make its "sufficiency challenge . . . clear enough for the trial court to discern its presence and to be able to distinguish it from an argument on the merits." *Id.*

"An argument *on the merits* . . . employs a . . . different evidentiary prism." *Id.* at 357. "When the sufficiency of a plaintiff's evidence is challenged by a motion to strike, the trial court must view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the plaintiff and resolve any reasonable doubt as to its sufficiency in [its] favor." *CUNA Mut. Ins. Soc'y v. Navy Yard Credit Union, Inc.*, 237 Va. 679, 683 (1989) (quoting *Meeks v. Hodges*, 226 Va. 106, 109 (1983)). But an argument on the merits "asks the trial court to reject any of the [plaintiff's] evidence that is inconsistent with the [defendant's] theory of the case and to accept instead the [defendant's] interpretation of the evidence." *Dickerson*, 58 Va. App. at 357. *Cf. Est. of A.T. Taylor v. Flair Prop. Assocs.*, 248 Va. 410, 415 (1994) ("[W]e do not consider the merits of the [appellee's] argument because it . . . is an attack on the weight ultimately to be given the evidence, rather than its legal sufficiency on the motion to strike."). Here, Integrated Composite did not raise a sufficiency challenge in its closing arguments, but rather made an argument on the merits, asking the trial court to accept its theory of the case and interpretation of the evidence. Accordingly, Integrated Composite failed to preserve for appellate review its arguments regarding its motion to strike. *See* Rule 5A:18; *Williams v. Cnty. of Gloucester Sheriff's Dep't*, 266 Va. 409, 411 (2003) ("The contemporaneous objection rule, embodied in Rule 5A:18 . . . , is based on the principle that a litigant has the responsibility to afford a court the opportunity to consider and correct a perceived error before such error is brought to the appellate court for review."). Further, Integrated Composite does not invoke the good-cause or ends-of-justice exceptions to Rule 5A:18, and we will not do so sua sponte. *See Hogle*, 75 Va. App. at 756.

## II. *Integrated Composite's Parol Evidence Argument Lacks Merit.*

Finally, Integrated Composite contends that the trial court "erred as a matter of law by[] permitting [p]arol evidence in the form of two invoices and testimony to support [Premier's]

claim of breach of alleged verbal contract and unjust enrichment." In so arguing, Integrated Composite marshals *Cave Hill* to support the well-established proposition that "[p]arol evidence of prior or contemporaneous oral negotiations are generally inadmissible to alter, contradict, or explain the terms of a written instrument provided the document is complete, unambiguous, and unconditional." *See* 264 Va. at 646 (quoting *Doswell Ltd. P'ship v. Va. Elec. & Power Co.*, 251 Va. 215, 222 (1996)). Integrated Composite argues that its distribution agreement with Premier was such a contract and that, thus, "Premier's witness testimony and evidence alleging a separate verbal contract and/or unjust enrichment [wa]s inadmissible evidence."

Integrated Composite misunderstands the parol evidence rule and its overarching purpose. At the heart of the rule is the concern that "at some 'future' date[,] another party could 'contradict or vary the plain language of the instrument itself' by citing 'parol evidence of the particular meaning [that] the party affixed to his words, or of his secret intention in making the instrument.'" *Worsham v. Worsham*, 74 Va. App. 151, 166 (2022) (second alteration in original) (quoting *Utsch v. Utsch*, 266 Va. 124, 130 (2003)). In other words, animating the parol evidence rule is the fear that a party may rely on parol evidence to contravene the agreement and alter its construction. It follows that "[t]he parol evidence rule applies to verbal agreements made *prior to* or *contemporaneously with* the execution of a simple written contract." *Piedmont Mt. Airy Guano Co. v. Buchanan*, 146 Va. 617, 626 (1926) (emphases added); *see also Va. Elec. & Power Co. v. N. Va. Reg'l Park Auth.*, 270 Va. 309, 316 (2005) ("[I]n controversies between two parties to a contract, parol evidence of *prior* or *contemporaneous* oral negotiations or stipulations is inadmissible to vary, contradict, add to, or explain the terms of a complete, unambiguous, unconditional, written instrument." (alteration in original) (emphases added) (quoting *Godwin v. Kerns*, 178 Va. 447, 451 (1941))); *Worsham*, 74 Va. App. at 158 ("Under the parol-evidence rule, when a written contract unambiguously expresses the agreement of the parties, extrinsic

evidence of the parties' *prior* or *contemporaneous* discussions is inadmissible to contradict the written terms." (emphases added)).  Indeed, it is upon this kind of parol evidence that a party would rely in making claims as to, for example, its intent at the time that it entered into the agreement, or to argue that a collateral agreement should govern the meaning of the instrument.

Thus, the parol evidence rule, by its own terms, cannot apply to an alleged *subsequent* verbal agreement.  *See Piedmont Mt. Airy Guano Co.*, 146 Va. at 626 ("[The parol evidence rule] has no application to subsequent parol agreements between the parties."); John Edward Murray, Jr. & Grover C. Grismore, Murray on Contracts § 108, at 238 (2d rev. ed. 1974) ("The rule has no application to agreements subsequent to the writing."); *cf. J.P. Houck Tanning Co. v. Clinedinst*, 118 Va. 131, 134-35 (1915) (finding that despite defendant's effort to "exclude from the jury all parol evidence in support of plaintiff's demand," "the parol evidence rule has no application . . . , when plaintiff's demand was not embodied in the written agreement and rests wholly upon a subsequent parol contract").

Accordingly, the trial court did not err by admitting the invoices over Integrated Composite's objections, since both invoices date to a period *after* Integrated Composite and Premier entered into their distribution agreement.

### III.  *Integrated Composite's Appellate Practices.*

Deserving of special attention are several representations made in the opening brief filed by Integrated Composite's counsel.  These representations occasionally shade into *mis*representation, and vary in kind and degree.  Some misrepresentations are slight, and so of an anodyne kind.  For example, though disfavored by this Court, it is not uncommon for counsel to give pertinent caselaw a gloss that favors their argument, but which may fail to square perfectly with the caselaw undergoing review.  Counsel for Integrated Composite does that here.

However, counsel also, at times, distorts relevant caselaw to the point of disfigurement, such that counsel's representations cross the boundary from slightly misleading into ineluctably false.

But it is not Integrated Composite's analysis of appellate jurisprudence that deserves special attention and discussion. More serious are some of Integrated Composite's representations of the record. Two particular instances should not go unremarked.[9] In its argument regarding assignments of error two and three, counsel for Integrated Composite characterizes the trial court's ruling regarding its parol evidence objection this way:

> The Circuit Court erred in over-ruling the objection stating, *in contradiction*, that, since . . . Premier had already admitted the existence of a separate written distribution contract, the invoices were only being offered to prove Premier's theory of a separate verbal contract.

Counsel gives a specific, detailed description of the trial court's ruling. However, the description, and all details contained within it, is a fiction. The trial court made no such ruling. Instead, after considering the parties' respective arguments, the trial court simply stated, "The objection is overruled." When Integrated Composite objected a second time, the trial court again stated that the invoices "will be admitted over objection." Thus, the trial court did not, as counsel for Integrated Composite asserts, "stat[e] . . . that, since . . . Premier had already

---

[9] It is neither feasible nor necessary to engage in an exhaustive, jot-or-tittle analysis of the multiple factual and other misrepresentations. Rather, here, we tease out two illustrative examples, both germane to the arguments Integrated Composite raises on appeal.

admitted the existence of a separate written distribution contract, the invoices were only being offered to prove Premier's theory of a separate verbal contract."[10]

A second instance serves to further illustrate the point. In the "Statement of Facts" presented in Integrated Composite's opening brief, counsel recounts that "Within 30 days of signing the contract, the distributor Premier informed the supplier Cor-Tuf that they, Premier, did not have funds to buy the minimum inventory of 100 yards and asked to buy 25 yards per quarter." To support this fact, counsel cites to the trial transcript, and specifically, the following exchange between Premier's counsel and Meyer:

> [Counsel:] Outside of these purchases for specific customers and specific transactions, did you ever purchase concrete just to have -- to keep, I guess, in supply, in storage?
>
> [Meyer:] Yes.
>
> [Counsel:] How many times did that happen?
>
> [Meyer:] That only happened twice. We were asked to purchase it and then they were going to store it, and then we were hoping to sell it to these jobs.

Meyer did not testify that Premier was without the requisite funds to purchase 100 yards of UHPC. Nor does Meyer testify that Premier asked to purchase 25 yards of UHPC per quarter. To the contrary, Meyer testified that Premier was asked by *Integrated Composite* to purchase the UHPC.

---

[10] Integrated Composite's characterization could be read as pertaining to its objection *to* the trial court's ruling. Even in that way, however, the fiction remains. Integrated Composite's objection was not that "since . . . Premier had already admitted the existence of a separate written distribution contract, the invoices were only being offered to prove Premier's theory of a separate verbal contract." Instead, when Premier sought to introduce the first invoice into evidence, Integrated Composite simply objected, "Your Honor, I just wanted to mention, we have an objection to these invoices as hearsay and parol evidence." When Premier undertook to introduce the second invoice into evidence, Integrated Composite's objection was even more succinct: "Same objection, Your Honor."

The forgoing representations, whether the product of hurried drafting, an excess of zeal, or something else, are troubling.  Indeed, both are wholly at odds with the record they purport to represent.  Because of this, we commend to counsel the practice of reviewing future appellate pleadings with an eye to such issues and urge their undertaking continuing legal education focused on appellate practice.

CONCLUSION

For the reasons elaborated in Sections I and II, we affirm the judgment of the trial court.

*Affirmed*.

Chaney, J., concurring in the judgment.

Although I agree that the trial court's judgment should be affirmed, I disagree with the majority's conclusion that Integrated Composite failed to preserve its first assignment of error regarding the trial court's award of unjust enrichment damages for transactions governed by contract. Accordingly, I would resolve appellant's first assignment of error on the merits. I would also reserve comments upon Integrated Composite's appellate practices to correcting the errors necessary to resolve the issues on appeal.

THE PARTIES' AGREEMENT DOES NOT PRECLUDE UNJUST ENRICHMENT DAMAGES

A. The issue was preserved.

Integrated Composite's primary argument before the trial court was that Premier's claim for damages is barred by a broad no-damages provision in the parties' integrated "Licensing and Distribution Agreement" (Agreement). The Agreement, § 10(f)(iv), subtitled "No Damages For Termination or Expiration" (No-Damages Clause), provides:

> Neither [Integrated Composite] nor Premier shall be liable to the other for damages of any kind, including incidental or consequential damages, on account of the termination . . . of this Agreement . . . . Premier waives any right it may have to receive any compensation or reparations on termination . . . of this Agreement . . . . Neither [Integrated Composite] nor Premier will be liable to the other on account of termination or expiration of this Agreement for reimbursement or damages . . . on account of any expenditures . . . or for any other reason whatsoever based upon or growing out of such termination . . . .

Agreement, § 10(f)(iv).

After the close of Premier's evidence, Integrated Composite filed a written "Motion to Strike Plaintiff's Testimony & Evidence In Support of a Verbal Contract." Integrated Composite argued:

> There was no oral contract between the parties, and *unjust enrichment is not available as a cause of action to the Plaintiff due*

> *to the parol evidence rule and to obligations in the prior terminated written agreement.*

(R. 217) (emphasis added). The trial court denied Integrated Composite's motion to strike. (R. 378-81).

In its closing argument, Integrated Composite argued to the trial court that, since the Agreement covered the subject matter of this dispute and had been terminated, the No-Damages Clause bars Premier's claim. Integrated Composite also argued that § 17(g), subtitled "Entire Agreement," precluded any purported extra-contractual obligations. Integrated Composite further argued to the trial court that it was not, in fact, unjustly enriched.

After the trial court entered judgment for Premier and awarded unjust enrichment damages, Integrated Composite promptly filed a post-trial motion to set aside the verdict. This post-trial motion specifically, and for the first time, cited *James G. Davis Construction Corp. v. FTJ, Inc.*, 298 Va. 582 (2020), for the proposition that "[t]he existence of an express contract covering the same subject matter of the parties' dispute precludes a claim for unjust enrichment." *Id.* at 592 (alteration in original) (quoting *CGI Fed. Inc. v. FCi Fed., Inc.*, 295 Va. 506, 519 (2018)).

However, the trial court did not rule on Integrated Composite's post-trial motion before losing jurisdiction under Rule 1:1. Although the trial court denied the post-trial motion, the denial was based on jurisdictional grounds and did not reach the substance of the motion. Consequently, Integrated Composite cannot rely on its post-trial motion to preserve its argument under Rule 5A:18. *See Brandon v. Cox*, 284 Va. 251, 256 (2012) (motion for reconsideration does not preserve arguments for appeal where appellant failed to obtain a ruling).

Although Integrated Composite did not obtain a ruling on its express post-trial argument that *unjust enrichment* damages are precluded by the Agreement, the trial court's final judgment necessarily rejected Integrated Composite's general argument that *all* damages are precluded by

the Agreement's No-Damages Clause. Rule 5A:18 only requires objections to be stated with "reasonable certainty." *See* Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with *reasonable certainty* at the time of the ruling." (emphasis added)). An objection is sufficient if the trial judge understands the point and has an opportunity to do something about it. *See Hicks v. Commonwealth*, 71 Va. App. 255, 266 (2019).

Here, Integrated Composite asserted in closing argument that Premier's claimed damages are precluded by the Agreement. *See Lee v. Lee*, 12 Va. App. 512, 515 (1991) (holding that grounds for an objection stated in closing argument at a bench trial preserves the issue for appellate review under Rule 5A:18). Integrated Composite argued to the trial court that "the written Distribution Agreement specifically limits the damages. It specifically says it is the entire agreement." (R. 446). Integrated Composite also argued to the trial court that it was not unjustly enriched because of its losses relating to the terminated Agreement and Premier's partial consumption of the product at issue, but this argument was made *in the alternative* to its primary argument that the Agreement's No-Damages Clause precluded Premier's claim for any damages whatsoever.

Although Integrated Composite's closing argument did not expressly argue that "unjust enrichment" damages are specifically precluded by the Agreement, the cases that support that precise proposition are grounded on the very argument that Integrated Composite did make: damages for transactions covered by a contract are limited to the damages available under the contract. *See Davis*, 298 Va. at 592-93. As explained in Third Restatement on Restitution and Unjust Enrichment:

> Considerations of both justice and efficiency require that private
> transfers be made pursuant to contract whenever reasonably
> possible, and that the parties' own definition of their respective
> obligations—assuming the validity of their agreement by all

> pertinent tests—take precedence over the obligations that the law would impose in the absence of agreement. Restitution is accordingly subordinate to contract as an organizing principle of private relationships, and the terms of an enforceable agreement normally displace any claim of unjust enrichment within their reach.

*Id.* at 593 (quoting Restatement (Third) of Restitution and Unjust Enrichment § 2, cmt. c, at 17). By arguing that the No-Damages Clause of the Agreement precluded Premier's damages, Integrated Composite apprised the trial court of its argument that all other damages, including unjust enrichment damages, are precluded. *See Hicks*, 71 Va. App. at 266. Thus, Integrated Composite's closing argument provided the trial court with an opportunity to reconsider the argument Integrated Composite made in its motion to strike: "unjust enrichment is not available as a cause of action to the Plaintiff due to the parol evidence rule and to obligations in the prior terminated written agreement." Consequently, I would hold that Integrated Composite preserved its objection to the trial court's award of unjust enrichment damages based on the argument that unjust enrichment is precluded by the Agreement.

### B. Premier's unjust enrichment damages are not precluded.

Although Integrated Composite preserved its argument that the Agreement precludes unjust enrichment damages, the argument fails because the two purchase transactions at issue are separate from the Agreement. The purpose of the Agreement was to establish a business relationship in which Premier acts as a distributor of Integrated Composite's Cor-Tuf product. Although the Agreement specifies that Premier would maintain a minimum inventory of the product, the Agreement does not specify a definite time or quantity for any particular purchase of the product. Moreover, the Agreement's integration clause expressly states that the Agreement is the *entire agreement* between Premier and Integrated Composite, thus precluding the possibility that the Agreement is intended to incorporate additional terms specifying the time and quantity of product purchases.

And assuming that the Agreement is the entire and exclusive contract governing Premier's purchases of Integrated Composite's product, the integration clause would prevent Premier from entering into separate purchase agreements for product, defeating the purpose of the Agreement. *See Transit Cas. Co. v. Hartman's, Inc.*, 218 Va. 703, 708 (1978) ("While any ambiguity [in the contract] must be resolved against the insurer, the construction adopted should be reasonable, and absurd results are to be avoided."). Thus, the Agreement is limited to specifying the licensing and distributing business relationship, and agreements to purchase specific quantities of Integrated Composite's product are separate from the Agreement. Integrated Composite did not argue to the trial court or this Court that a separate written agreement relating to the two purchases at issue precludes the award of unjust enrichment damages. Since the Agreement does not govern the product purchases at issue, it does not bar unjust enrichment damages relating to those purchases.

For the foregoing reasons, I concur in affirming the trial court's judgment.